IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 27 2000

Robert M. March
CLERK

CARLOS MALDONADO,

    Plaintiff,

vs.

    Civil No. 95-221 JP/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

    Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion for an Order Authorizing Attorney Fees, filed August 31, 2000 **[docket # 19]**. Plaintiff's counsel requests authorization for a fee in the amount of $3,749.70 for 18.05 hours of legal services rendered before this Court on Plaintiff's social security appeal, at an hourly rate of $207.74. The government objects to Plaintiff's hourly rate and instead, "suggests" an hourly rate of $150.00.

The $207.74 hourly rate would increase Plaintiff's counsel's usual fee, but Mr. Martone points out that it has remained at $185.00 for the past few years and gives several reasons for the requested increase: unfavorable decisions have increased, making social security disability legal work less desirable; social security disability benefits have increased annually with a cost of living adjustment while costs of maintaining a law office have also increased. The cost of



handling social security cases has recently increased, with a 6.3 % "assessment" having been imposed by the Commissioner on attorney fees.[1] See 42 U.S.C.A. § 406(d). The purpose of this "user fee" tax is "to recover from attorneys' fees the cost of administering the process used to certify payment of attorneys fees." H.R.Conf.Rep.No.106-478 (accompanying H.R.1180) (Nov. 17, 1999). However, attorneys are prohibited from requesting or otherwise obtaining reimbursement of the 6.3% assessment from the past-due benefits of his client. See Pub.L. 106-170, 1999, § 406(a)(1).

The court considers several factors in determining the amount of fees: the time and labor required; novelty and difficulty of the questions; preclusion of other employment due to the acceptance of the case; skill required; customary fee; whether fee is fixed or contingent; time limitations imposed upon the attorney, amount involved and the result obtained; experience, reputation, and ability of the attorney; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases. Velasquez v. Dir., Office of Workers' Comp. Programs, U.S. Dep't. of Labor, 844 F.2d 738 (10th Cir. 1988) (citing Blankenship v. Schweiker, 676 F.2d 116, 118 (4th Cir. 1982)); Hubbard v. Shalala, 12 F.3d 946, 948 (10th Cir. 1983).

---

[1] Pub.L 106-170 (HR 1180) (the "Ticket to Work and Self Sufficiency Program") amended 42 USCA § 406 by adding subsection (d). The law became effective January 31, 2000 ("the last day of the first month beginning after the month in which this Act is enacted" [December 17, 1999]). See Pub.L. 106-170, Title IV, 406(d); 113 Stat., 1860, 1912; 42 USCA § 406 note. As a result of this tax in the present case, Plaintiff's counsel was paid $3748.00 instead of $4000.00 for legal services rendered at the Social Security Administration agency level. Reply at 2, n.1.

Mr. Martone has focused his practice on social security appeals for a considerable number of years,[2] a fact which allows this Court to recognize him as a practitioner who is not only proficient in that area of law, but efficient in terms of the time and labor such cases require under his handling. His contention that social security appeals have become less appealing to attorneys is well-taken. I note that the possibility that the new 6.3% attorney fee tax might discourage legal representation for social security cases was not lost on Congress. Legislative committee members urged Congress and the "Committees of jurisdiction" to "reconsider the assessment promptly if [it is found that] such a fee in any way impairs or impacts beneficiaries' ability to obtain and secure legal representation." H.R.Conf.Rep.No.106-478 (accompanying H.R.1180). Another legislative report expressed the same concern with the new tax, stating that it would "likely deter some attorneys from representing disability claimants." See H.R.Rep.No. 106-393(I), (Oct. 18, 1999).[3]

Mr. Martone also points out, correctly, that courts may consider cost of living as a factor in awarding attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). See Chynoweth v. Sullivan, 920 F2d 648 (10th Cir. 1990) (increasing EAJA hourly rate of $75 to $96.75 to allow for cost of living); Harris v. Railroad Retirement Bd., 990 F.2d 519, 521 (10th

---

[2] Mr. Martone's law firm has limited its practice to Social Security disability appeals since 1988. Mem., Martone Aff., ¶ 5.

[3] This report accompanied another House bill, H.R. 3070, which was never signed into law but included an "assessment fee" provision identical to the one in HR 1180. This same report noted that "claimants with professional, expert legal representation are far more likely to receive the benefits to which they are entitled." H.R.Rep.No.106-393(I) (noting that in 1998, 57.6% of claimants represented by attorney received benefits compared to only 35.7% of those who were not represented).

Cir. 1993) (finding that plaintiff's attorney was entitled to a cost of living increase); Pettyjohn v. Chater, 888 F.Supp.1065 (D.Colo. 1995) (citing 28 U.S.C. § 2412(d)(2)(A)(ii)) (fee awards not to exceed statutory amount unless "court determines that an increase in the cost of living . . . justifies a higher fee").[4] Moreover, the Commissioner has regularly concurred in these increases over the past few years. See Reply, Ex. A at 2.[5]

Nevertheless, the government urges this Court to authorize an award for fees under § 406(b)(1) which would yield a lower net compensation for Mr. Martone. A *reduction* in his hourly rate together with the newly inflicted user tax clearly would have a significant impact on a law practice that limits itself to social security appeals. Although Plaintiff describes the government's position as "curious and disturbing," it strikes me more as one that is confiscatory and bizarre. In this situation, I find nothing reasonable about a $150.00 hourly fee, particularly

---

[4] The statutory amount for the hourly fee was changed from $75.00 to $125.00 in March 1996. See Publ.L. 104-121, 232(b)(1) (amending 28 U.S.C.A. 2412(d)(2)A)).

[5] See e.g., the following cases where plaintiff was represented by Mr. Martone: Civil No. 98-1494 JC/WWD (Defendant agreeing to hourly rate of $133.00, Order entered Dec.10, 1999); Civil No. 99-974 LH/WWD (Defendant agreeing to hourly rate of $134.00, Order entered July 25, 2000; Civil No. 97-233 JC/WWD (Defendant agreeing to hourly rate of $130.00, Order entered July 6, 1998; Civil No. 98-1550 BB/WWD (Defendant agreeing to hourly rate of $133.00, Order entered Nov. 15, 1999).

Other cases involving other plaintiffs' attorneys are, by way of example: Civil No. 98-1136 JP/WWD (Defendant agreeing to hourly rate of $132.00, Order entered Nov. 9, 1999; Civil No. 98-1537 LH/WWD (Defendant agreeing to hourly rate of $132.00, Order entered Oct. 7, 1999; Civil No. 98-1223 JP/WWD (Defendant agreeing to hourly rate of $133.00, Order entered Jan. 14, 2000).

when in recent years the Commissioner has concurred in § 406(b) requests for fees by Mr. Martone for hourly rates of $185.00 and even $207.41.[6]

Defendant's concern in seeing that government funds owed to claimants are "properly disbursed," Resp at 1, is well-taken, but the means by which the government proposes to do so is not. Because attorneys who are familiar with the statutes and regulations relating to social security law would require less time to devote to a case, it does not seem economically sound to make it increasingly less feasible for them to accept these cases. Defendant's concern with "double-dipping," i.e., receiving fees for the same services under EAJA and the Social Security Administration, is also not justified. Plaintiff's counsel has stated (as I note that he has done in past fee requests under §406(b)) that Plaintiff will receive the smaller of the two amounts. Reply at 5.

Accordingly, in deciding on a reasonable hourly rate for Mr. Martone, see Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), I will consider the usual factors considered by the Court when determining a reasonable lodestar amount as well as the cost of living. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (court has discretion to determine the amount of a fee award); see also Headlee v. Bowen, 869 F.2d 548, 551-52 (10th Cir.), cert. denied, 110 S.Ct. 507 (1989) (evidence of a cost of living increase does not mandate a proportionate increase in

---

[6] See e.g., the following cases: Civil No. 96-0661 JP/LFG ($185.00 hourly fee, Order entered March 1999); Civil No. 97-1732 M/WWD ( $185.00 hourly fee, Order entered May 1999; Civil NO. 95-056 SC/JHG ($185.00 hourly fee, Order entered Feb.1999); Civil 98-646 M/LCS ($204.71 hourly fee, Order entered June 2000); Civil No. 95-354 BB/WWD ($204.71 hourly fee, Order entered Aug. 2000). The government's concurrence in these cases belies its statement that it has a "general policy" to object to fees higher than $150.00 in the community - See Resp., n.1.

fees awarded under EAJA, rather the matter is discretionary with the court). The Consumer Price Index ("CPI") shows an increase of 13% from August 1995 to August 2000 [*(172.8 - 152.9) ÷ 152.9*] resulting in an increase in the hourly fee of $209.00 rounded out to $209.00,[7] which I find to be a reasonable amount.[8]

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for an Order Authorizing Attorney Fees [docket # 19] is hereby GRANTED in the amount of $3,772.45.

_____
UNITED STATES DISTRICT JUDGE

---

[7] See U.S. Department of Labor, Bureau of Labor Statistics, Table Containing History of CPI-U U.S. (from 1913 to Present), 9/28/00. The CPI is most commonly used as a basis for cost of living increases. See Harris, 990 F.2d at 521, n.1 (noting that both parties relied on the CPI); Harris, 869 F.2d at 550 (Consumer Price Index is sufficient evidence upon which to calculate the cost of living in determining an EAJA fee award).

[8] The Tenth Circuit uses a reasonable hourly fee as a starting point and then examines the circumstances of the case to determine if a "heightened hourly rate" is justified. Hubbard, 12 F.3d at 948 (citing Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983) and quoting Hensley, 461 U.S. at 433). However, I find no basis in the present case for a "heightened hourly rate."